**Michael E. Haglund,** OSB No. 772030
Email:  haglund@hk-law.com
**Julie A. Weis,** OSB No. 974320
Email: jweis@hk-law.com
**Eric J. Brickenstein,** OSB No. 142852
Email: ebrickenstein@hk-law.com
**HAGLUND KELLEY LLP**
200 S.W. Market Street, Suite 1777
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Pendleton Division)

| | |
|---|---|
| **ELH LLC,** an Oregon limited liability company; **OREGON HEREFORD RANCH LLC,** an Oregon limited liability company; **PAUL GELISSEN; MAURICE** and **LUCY ZIEMER; FRANK MUELLER; CRAIG** and **CYNTHIA PARKS** and **RICHARD** and **KRISTINE CARPENTER,**<br><br>Plaintiffs,<br><br>v.<br><br>**WESTLAND IRRIGATION DISTRICT,** an irrigation district organized under the laws of the State of Oregon,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**<br><br>**42 U.S.C. § 1983**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.    For more than a decade, the Westland Irrigation District has systematically taken

water from plaintiffs and other senior rights holders and redistributed that water to junior rights

Page 1 -    **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

holders in blatant violation of Oregon water rights law.  Instead of carrying out its obligations to distribute irrigation water according to Oregon's prior appropriation system, which distributes water on a "first in time, first in right" basis, defendant's board of directors has implemented a water delivery scheme favoring junior rights holders to the detriment of senior primary and supplemental water rights holders and has further facilitated large scale theft of Umatilla River and McKay Reservoir waters by allowing high levels of over-pumping by three junior water rights holders.

2.      Defendant uses four tactics to accomplish its massive misappropriation of plaintiffs' and other senior rights holders' water rights, which has the effect of depriving plaintiffs of the opportunity to double crop their farms and shifts that lucrative opportunity to junior water rights holders including the three largest farmers in the Westland Irrigation District.  These four tactics include the following:  use of flood water delivery contracts to facilitate illegal over-pumping and water spreading by holders of these contracts; fraudulent water delivery accounting practices which grossly disadvantage senior water rights holders; a pervasive failure to enforce Oregon's priority date water rights system in multiple respects; and use of "limited water" delivery contracts to illegally grant rights to McKay Reservoir stored water to junior users in violation of the rights of plaintiffs and other senior water rights holders.

3.      Plaintiffs are all patrons of the Westland Irrigation District whose land is served by senior water rights to irrigation water from the Umatilla River and McKay Reservoir. Plaintiffs have suffered a substantial loss of the irrigation water to which each is entitled in each of the last six years as a result of defendant's misappropriation scheme illegally favoring junior water rights users.

///

Page 2 -    **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over plaintiffs' takings claim pursuant to 42 U.S.C. § 1983, also known as the Civil Rights Act of 1871, which prohibits a governmental entity like defendant from taking private property including vested water rights without compensation in violation of the Fifth Amendment to the U.S. Constitution.

5.     This Court has jurisdiction over plaintiffs' claim for declaratory relief, which seeks to prevent future takings of their certificated water rights pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (a).

6.     Supplemental jurisdiction over plaintiffs' Oregon constitutional and common law claims is also proper pursuant to 28 U.S.C. § 1367 because those claims are so related to the section 1983 claim that they form part of the same case and controversy under Article III of the U.S. Constitution.

7.     Venue is proper in this district under 28 U.S.C. § 1391 because the defendant regularly transacts business within this district and a substantial part of the events giving rise to plaintiffs' claims occurred in this district.

## PARTIES

8.     Plaintiff ELH LLC is an Oregon limited liability company owned by Patrick and Dixie Echeverria.  ELH LLC owns a farm within the Westland Irrigation District in Umatilla County comprised of 710.28 acres, 517.9 of which are served by appurtenant certificated water rights, including primary Umatilla River water rights with priority dates of 1903 and 1961 and a 1924 McKay Reservoir supplemental water right.  The Echeverrias raise cattle and grow alfalfa, wheat, peas, corn, triticale and potatoes on their farm.

///

Page 3 -     **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

9.      Oregon Hereford Ranch LLC is owned by Doug and Don Bennett, two long-time Umatilla County farmers who were honored as Diamond Pioneer Recipients by the Oregon State University College of Agricultural Sciences in 2007. The Bennetts' farm comprises 190.31 acres in the Westland Irrigation District, 120.4 of which have certificated water rights, including primary Umatilla River water rights with 1903 and 1961 priority dates and a 1924 McKay Reservoir supplemental right. The Bennetts raise Angus cattle and grow alfalfa, wheat, peas, carrots and corn on their farm.

10.     Plaintiff Paul Gelissen owns a farm of 58.22 acres in the Westland Irrigation District with certificated water rights on 50.7 acres. These certificated rights include primary Umatilla River water rights with priority dates of 1907 and 1961 and a 1924 McKay Reservoir supplemental water right. Mr. Gelissen grows alfalfa, wheat and corn on his farm.

11.     Plaintiff Frank Mueller owns a farm of 461.16 acres in the Westland Irrigation District with certificated water rights on 414.6 acres. These include Umatilla River primary water rights with a priority date of 1907 and a 1924 McKay Reservoir supplemental water right. Mr. Mueller grows alfalfa, wheat, peas and corn.

12.     Plaintiffs Maurice and Lucy Ziemer own a farm of 79.96 acres in the Westland Irrigation District with certificated water rights on 72.0 acres. These include a Umatilla River primary right with a priority date of 1907 and a 1924 McKay Reservoir supplemental right. The Ziemers raise corn, peas, triticale, alfalfa and carrots on their farm.

13.     Plaintiffs Craig and Cynthia Parks own a farm of 837.31 acres in the Westland Irrigation District with certificated water rights on 403.4 acres. These include primary Umatilla River water rights with priority dates of 1903, 1907 and 1961 and a 1924 McKay Reservoir supplemental water right. The Parks raise alfalfa, wheat, peas and corn on their farm.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

14.     Plaintiffs Richard and Kristine Carpenter own a farm of 223.51 acres in the Westland Irrigation District with certificated water rights on 79.7 acres.  These include primary Umatilla River water rights with priority dates of 1907 and 1961 and a 1924 supplemental McKay Reservoir water right.  The Carpenters grow alfalfa, corn and wheat on their farm.

15.     Defendant Westland Irrigation District is an irrigation district organized under the laws of the State of Oregon, ORS Chapter 545.  Defendant diverts water from the Umatilla River at the Westland Irrigation District dam, approximately one mile south of Echo, Oregon. Diversions start in March or early April and continue through October.

## BACKGROUND

16.     Between March 1 and generally a time in mid to late May of each year, three junior water rights holders who own over 5,000 acres of farmland knowingly – and with defendant's permission and participation – withdraw water from the Umatilla River at flow rates far in excess of the rate in cubic feet per second (cfs) authorized in their respective water rights certificates issued by the State of Oregon.  For example, on May 25, 2016, David and Art Prior, owners of the Eagle Ranch, were withdrawing Umatilla River water at their pump station on defendant's main canal at a rate of 20,000 gallons per minute or 44.54 cfs, far in excess of their authorized rate given the flow level of the Umatilla River on that date.  A photograph of a white board at the Prior pump station documenting the over-pumping on May 25, 2016 is attached as Exhibit A.

17.     Two other large landowners, Robert Levy and Amstad Farms, regularly engage in the same over-pumping practice during this period of March 1 through mid to late May.

18.     The massive illegal over-pumping that the Westland Irrigation District facilitates for the benefit of these junior water rights holders results in excessive and illegal diversions at

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

defendant's point of diversion which causes the flow of the Umatilla River to drop downstream

of defendant's point of diversion significantly faster than would be the case if defendant operated

legally in full compliance with Oregon water rights law.  The resulting substantial reduction in

the Umatilla River's live flow downstream of defendant's diversion canal damages both senior

water rights holders and fishery resources as described below.

19.    Pursuant to the terms of the 1991 McKay and Umatilla River Water Management

Plan and other applicable requirements and agreements, when the Umatilla River's live flow at

the UMDO gauge downstream from defendant's diversion drops to 150 cfs or below, stored

water in the McKay Reservoir operated by the Bureau of Reclamation is released to maintain the

Umatilla River flows at the UMDO gauge at 150 cfs for fishery purposes.  However, because the

Westland Irrigation District does not regulate the flow of its diversion canal from March 1 to

approximately mid-to-late May to accept only that level of water necessary to serve its senior

rights holders entitled to receive water pursuant to the Plan based upon the river level as shown

on the Pendleton gauge, defendant receives and distributes more water both from the Umatilla

River and the McKay Reservoir than its patrons and non-patrons who receive water deliveries

through defendant's infrastructure are actually entitled to receive at that time.

20.    This creates a vicious cycle in which the McKay Reservoir is tapped earlier than it

should be for releases of stored water to benefit fisheries, thereby depleting the amount of stored

water available to meet irrigation water rights throughout the remainder of the season.  Over the

last three years, these releases have reduced total stored water in the reservoir by an average of

nearly 15% to benefit fish and to supply water to junior users with no right to that water before

the late May date on which defendant actually starts accounting for water deliveries from the

McKay Reservoir.  This excess diversion occurs during a period in the spring that spans some

Page 6 -    **COMPLAINT FOR UNCONSTITUTIONAL
TAKINGS AND OTHER CLAIMS**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

four to six weeks when the McKay Reservoir resource should be preserved for the late summer in order to provide supplemental water to senior rights holders through the end of the irrigation season on October 15.

21.    Defendant's massive water misappropriation scheme includes four unlawful components:

a.    Use of flood water delivery contracts granted to junior rights holders to divert more Umatilla River water into defendant's canal than is legally authorized in order to facilitate illegal over-pumping by the holders of these contracts between March 1 and mid to late May of each irrigation season;

b.    Fraudulent water accounting practices including failing to monitor water usage by district patrons throughout the irrigation season and to properly account for plaintiffs' and other senior users' accumulation rights when there is insufficient Umatilla River flow to honor all water rights and McKay Reservoir water is being released;

c.    A pervasive failure to enforce Oregon's priority date water rights system, which facilitates illegal over-pumping and water spreading – the use of appropriated water by junior users on acreage not certificated to receive that water – all to the detriment of senior water rights holders like plaintiffs; and

d.    Entering into "limited water" delivery contracts granting junior users rights to a share of the McKay Reservoir water resource in clear violation of plaintiffs' 1924 McKay Reservoir supplemental water rights.

Each of these illegal tactics is described in greater detail in paragraphs 24-40 below.

22.    The Westland Irrigation District and its board of directors have implemented this scheme to the detriment of senior water rights holders without appropriate notice or explanation to the patrons of the district.  For more than a decade, defendant and its board of directors have concealed this scheme from the public and its patrons by operating in a fashion that minimizes or

///

Page 7 -    **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

eliminates transparency and accountability.  To keep the details of its scheme shielded from the

public and district patrons, defendant and its board of directors utilize the following practices:

      a.      Cryptic uninformative board meeting agendas;

      b.      Frequent illegal use of so-called "executive sessions" where the real business of the district is performed and no minutes are prepared;

      c.      Withholding of public information in the face of legitimate public records requests; and

      d.      Directing staff not to be responsive to questions from district patrons making legitimate inquiries about water deliveries and district accounting for Umatilla River and McKay Reservoir deliveries to district patrons.

      23.      The efforts of defendant and its board of directors to conceal the misappropriation

of water from senior rights holders for the benefit of junior users has been successful for 10 or

more years.  It was not until a small handful of senior users including plaintiffs pursued an

intensive investigation over the last few months that the full scope and detail of defendant's

illegal scheme were discovered.

**GOVERNING 1991 McKAY AND UMATILLA RIVER
WATER MANAGEMENT PLAN**

      24.      Defendant's scheme misappropriating Umatilla River and McKay Reservoir water

for the benefit of junior users clearly violates the terms of the management plan governing these

water resources and Oregon water rights law.  The 1991 McKay and Umatilla River Water

Management Plan, a copy of which is attached as Exhibit B, requires the protection of water

rights users in the basin according to rightful priority.  The first paragraph of the McKay and

Umatilla River Water Management Plan includes the following:

      The Umatilla River, McKay Creek and McKay Reservoir water will be managed to ensure benefits to all rightful users.  The implementation of this plan will allow a water management system to be used on the Umatilla River and McKay Creek that will allow for maximum flexibility

Page 8 -    **COMPLAINT FOR UNCONSTITUTIONAL
      TAKINGS AND OTHER CLAIMS**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

and beneficial use of water without waste. <u>The plan will protect the water rights of all users, including instream rights.</u>

Exhibit B at 1 (emphasis added).

25.    The McKay and Umatilla River Water Management Plan includes the following mandatory directives that govern the operational activities of defendant Westland Irrigation District:

> All water being diverted from the natural stream will be accounted for.

Exhibit B at 2.

> All McKay Reservoir contract holders and all natural flow users in the mid-and lower river segments, with water rights that allow diversion of 11.2 gpm (.025 cfs) or more, are required to have a measuring device.

*Id.*

> An individual's rate of water diversion shall not exceed the rate of their water right in the absence of an approved rotation agreement.

*Id.* at 3.

> Measuring devices or reporting of use will ensure that users stay within the limits of their water rights.

*Id.*

## FOUR COMPONENTS OF DEFENDANT'S WATER MISAPPROPRIATION SCHEME

### Flood Water Delivery Contracts

26.    Despite the above mandates and other provisions of the governing McKay and Umatilla River Water Management Plan, which requires water allocation on the basis of "first in time, first in right" priorities, defendant has entered into multiple flood water delivery contracts allowing junior patrons to withdraw water from the Umatilla River in excess of their legal entitlements.  Approximately 12 of these contracts were entered into between 1981 and 1991.

Page 9 -    **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

Three of these flood water delivery contracts involve three large owners in the Teel Irrigation District, specifically L&L Farms owned by Robert Levy, Eagle Ranch owned by David and Chet Prior, and Amstad Farms.  A copy of the 1981 contract with L&L Farms, signed on L&L's behalf by Robert Levy—who is also defendant's long-time board chairman—is attached as Exhibit C.

27.    Each of the flood water delivery contracts that defendant has entered into contains the following provision:

4. <u>WATER RIGHTS</u>:

Contractor has or will obtain his own water rights authorizing the diversion and use of Contractor's water. The District shall have no responsibility or obligation of any kind with respect to the securing or protecting of Contractor's water rights. The point of diversion for Contractor's rights will be the District's dam and main canal on the Umatilla River.

Exhibit C at 1.

28.    The water rights held by the parties to the flood water delivery contracts with defendant are in nearly every case junior to plaintiffs' rights.

29.    The flood water delivery contracts describe the nature of the water delivery service being provided by defendant as "totally interruptible."  The relevant provision further provides:

10. <u>NATURE OF SERVICE</u>:

If, in the sole determination of the District, the system's capacity is not being fully utilized, under all of the circumstances then existing and then foreseeable, the District will provide water delivery service to the Contractor consistent with all of the terms of this Contract.

Exhibit C at 3.

30.    Defendant's use of flood water delivery contracts has allowed the holders of these contracts, and in particular the three largest contracts accounting for 100 cfs, which is over 70%

Page 10 -  **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

of the total authorized volume under these contracts, to draw substantial water from the Umatilla River's live flows early in the irrigation season. These three large farmers are also exceeding the cfs levels set out in their respective flood water delivery contracts by a substantial margin.

31.    As a result of the illegal and unauthorized diversions for holders of defendant's flood water delivery contracts, the Umatilla River's live flow is depleted earlier than it would be if the illegal diversions and water spreading to acreage without rights to the diverted water were not occurring. Specifically, these practices have resulted in the lowering of the river's live flow to 150 cfs at the UMDO gauge earlier than would otherwise be the case in each of the last six irrigation seasons as well as the 2016 irrigation season. As a result, the McKay Reservoir is tapped earlier than should be the case in order to maintain adequate flows for fish at the 150 cfs level at the Umatilla River UMDO gauge.

**Fraudulent Water Accounting**

32.    For at least the past decade, defendant has systematically engaged in wholesale fraud regarding its accounting for water usage by patrons of the Westland Irrigation District. This fraud has included systematic failure to measure actual usage by district patrons, which facilitates illegal over-pumping by junior patrons and non-patrons using defendant's delivery system, and failing to properly apply the "rotation-accumulation formula" of the 1991 McKay and Umatilla River Management Plan to account for water accumulation by senior water rights users, which results in that accumulated water being diverted to and used by junior water rights holders rather than being credited to plaintiffs and others with senior water rights.

33.    Throughout each of the six irrigation seasons dating back to 2010 and continuing during the current 2016 irrigation season, defendant has failed to comply with the requirement in the 1991 McKay and Umatilla River Management Plan that each water right holder's

Page 11 -    **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

accumulation be accounted for when there is "insufficient flow to honor all water rights" to Umatilla River live flows and McKay Reservoir water is being released.  Defendant's failure to account for accumulation beginning as soon as this point is reached facilitates deliveries to junior water rights holders that exceed their certificated water rights (some of which is accomplished through pumping at rates higher than allowed by those rights), which has the effect of misappropriating the accumulation that would otherwise accrue to plaintiffs and other senior water rights holders.

**Pervasive Failure to Enforce Water Priorities**

34.    Throughout each of the irrigation seasons dating back to 2010 and continuing during the current 2016 irrigation system, defendant has failed to enforce Oregon's "first in time, first in right" priority system in the delivery of irrigation water from the Umatilla River and McKay Reservoir in the following particulars:

a.    Failing to monitor usage of district patrons and others using defendant's delivery system throughout the irrigation season;

b.    Failing to cut off junior users as required when the Umatilla River live flows fall below the cfs levels necessary to serve those junior rights holders and failure to properly apply the accumulation-rotation formula to ensure that priorities are honored;

c.    Failing to honor legitimate calls for water by plaintiffs and to cut off junior water rights holders as required by Oregon law; and

d.    Failing to monitor the acreage to which junior water rights holders are delivering Umatilla River and McKay Reservoir water, which facilitates illegal water spreading of that water to acreage that has no certificated water rights to the Umatilla River or McKay Reservoir at the time and place the water is being used.

///

Page 12 -  **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

**Limited Water Delivery Contracts**

35.    Defendant also utilizes so-called "limited water" delivery contracts, to carry out its scheme to misappropriate water rights from senior rights holders and deliver that water to junior rights holders.  A copy of one of defendant's limited water delivery contracts with the Robert Levy Family Trust is attached as Exhibit D.  Each of those contracts includes the following provision regarding water rights:

> 8.0  TIME OF DELIVERY:
>
> The water shall be delivered to CONTRACTOR together with and at the same time as McKay water is delivered to the DISTRICT users in general.  However, if at any time, there is insufficient capacity in the delivery system of the DISTRICT to deliver water to the regular DISTRICT users and those persons hold contracts such as this Contract, the regular users of the DISTRICT shall be given a preference in water delivery.

36.    Despite the above provision requiring that defendant's patrons are entitled to priority, defendant has implemented the limited water delivery contract illegally by granting to the holders of limited water delivery contracts a proportionate share of the stored water in McKay Reservoir regardless of whether that volume is sufficient to meet 100% of the defendant's senior rights holders' allotment.  This is accomplished in Section 7.1 of the contract, which specifically provides that each limited water delivery contract holder, in those years that defendant "begins the irrigation system with a full supply of McKay water, the CONTRACTOR shall be entitled to one acre foot of McKay water per acre contracted herein."  Ex. D at 2.

37.    The purported rationale for defendant's entry into limited water delivery contracts was to grant to those junior users funding a water conservation project in the late 1980s the rights to water saved by that project, but these contracts did not comply with applicable Oregon statutes and thus they violate the priority system that is the centerpiece of Oregon law.

Page 13 -  **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

38.    The only way to obtain a legal right to use water saved through a conservation project is to comply with the procedure provided for in ORS 537.445 through ORS 537.500 water.

39.    The Westland Irrigation District implemented a water conservation project in the late 1980s, but never filed any application for allocation of the water conserved from that project or otherwise met any of the statutory requirements for allocation of the water saved from that project.

40.    Defendant had no legal authority to grant special water rights to junior users through the use of limited water delivery contracts without compliance with the Oregon Conserved Water Right statute.  Each such contract is therefore void and unenforceable.

### FIRST CLAIM FOR RELIEF
### (Unconstitutional Taking—42 U.S.C. § 1983)

41.    Plaintiffs reallege paragraphs 1 through 40.

42.    The Fifth Amendment of the U.S. Constitution includes a Takings Clause, which states that:

> [N]or shall private property be taken for public use . . . without just compensation.

43.    During each of the six irrigation seasons dating back to 2010 and continuing into a seventh irrigation season in 2016, defendant's actions have misappropriated and taken plaintiffs' rights to substantial water deliveries from the Umatilla River and McKay Reservoir without any compensation in violation of the Takings Clause of the Fifth Amendment of the U.S. Constitution.  Defendant's misappropriation of plaintiffs' senior water rights has deprived plaintiffs of the opportunity to double crop their farms and shifted that lucrative opportunity to junior water rights holders in violation of Oregon water rights law.

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

44.     As a result of defendant's unconstitutional taking of appropriated water rights from 2010 through the present, plaintiffs suffered damages to those acres on each of their farms with appurtenant senior water rights in the form of reduced value of approximately $250 per acre for each of the last six years and continuing through trial.  As of the filing of this Complaint, plaintiffs have collectively suffered $2.9 million in damages and will continue to suffer damages annually until defendant is enjoined from continuing its illegal misappropriation of plaintiffs' water rights.

45.     In addition to damages, plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting defendant from the following:

a.      Withdrawing water at its diversion canal on the Umatilla River that exceeds the level of flow in cfs authorized for district patrons and non-patrons holding certificated water rights who are at the time of withdrawal entitled to priority based on the Umatilla River's live flow measured at the Pendleton River gauge;

b.      Failing to monitor water usage by district patrons throughout the irrigation system and to properly account for plaintiffs' and other senior users' accumulation rights;

c.      Failing to enforce Oregon's priority date water rights system by failing to cut off junior users when required and allowing illegal water spreading on acres without sufficient water rights to the Umatilla River and McKay Reservoir; and

d.      Making any further deliveries to the holders of void limited water delivery contracts.

46.     Pursuant to 42 U.S.C. § 1983, plaintiffs are entitled to an award of their reasonable attorney's fees and costs.

## SECOND CLAIM FOR RELIEF
### (Unconstitutional Taking—Article I, § 18 Oregon Constitution)

47.     Plaintiffs reallege paragraphs 1 through 40.

Page 15 -  **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

48.    Article I, § 18 of the Oregon Constitution includes a Takings Clause that provides:

> Private property shall not be taken for public use . . . without just compensation.

49.    During each of the six irrigation seasons dating back to 2010 and continuing into a seventh irrigation season in 2016, defendant's actions have misappropriated and taken plaintiffs' rights to substantial water deliveries from the Umatilla River and McKay Reservoir without any compensation in violation of the Takings Clause of the Oregon Constitution. Defendant's misappropriation of plaintiffs' senior water rights has deprived plaintiffs of the opportunity to double crop their farms and shifted that lucrative opportunity to junior water rights holders in violation of Oregon water rights law.

50.    As a result of defendant's unconstitutional taking of plaintiffs' appropriated water rights from 2010 through the present, plaintiffs suffered damages to those acres on each of their farms with appurtenant senior water rights in the form of reduced value of approximately $250 per acre for each of the last six years and continuing through trial.  As of the filing of this Complaint, plaintiffs have collectively suffered $2.9 million in damages and will continue to suffer damages annually until defendant is enjoined from continuing its illegal misappropriation of plaintiffs' water rights.

51.    In addition to damages, plaintiffs are entitled to preliminary and permanent injunctive relief as set out in paragraph 45 above.

52.    Pursuant to ORS 20.085, plaintiffs are entitled to an award of their reasonable attorney's fees and costs.

///

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

## THIRD CLAIM FOR RELIEF
### (Declaratory Judgment)

53.    Plaintiffs reallege paragraphs 1 through 40.

54.    In order to prevent defendant from continuing to misappropriate plaintiffs' senior certificated water rights, plaintiffs seek a declaratory judgment declaring that defendant is legally prohibited from the following:

    a.    Withdrawing water at its diversion canal on the Umatilla River that exceeds the level of flow in cfs authorized for district patrons and non-patrons holding certificated water rights who are at the time of withdrawal entitled to priority based on the Umatilla River's live flow measured at the Pendleton River gauge;

    b.    Failing to monitor water usage by district patrons throughout the irrigation system and to properly account for plaintiffs' and other senior users' accumulation rights;

    c.    Failing to enforce Oregon's priority date water rights system by failing to cut off junior users when required and allowing illegal water spreading on acres without sufficient water rights to the Umatilla River and McKay Reservoir; and

    d.    Making any further deliveries to the holders of void limited water delivery contracts.

## FOURTH CLAIM FOR RELIEF
### (Tortious Interference with Economic Relations)

55.    Plaintiffs reallege paragraphs 1 through 40.

56.    At all material times, plaintiffs owned farmland served by valuable certificated primary and supplemental water rights within the Westland Irrigation District as described in paragraphs 8-14 above.  Over the last two years dating back to the 2014 irrigation season, defendant and its board of directors have intentionally interfered with plaintiffs' appurtenant water rights as alleged above.

///

Page 17 -  **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

57.    As a direct and foreseeable result of defendant's conduct, plaintiffs have suffered substantial reductions in the economic value and productive capacity of their farmland acres with certificated and supplemental water rights.  As a result of defendant's interference with plaintiffs' water rights, plaintiffs have suffered economic damage in the approximate amount of $250 per acre, but in amounts that will be specifically proven at trial.  Collectively, over the last two irrigation seasons and during the current 2016 season, plaintiffs have suffered a loss of approximately $1.24 million.

58.    Plaintiffs seek injunctive relief prohibiting defendant from continued interference with plaintiffs' certificated water rights as alleged in paragraph 45 above.

### FIFTH CLAIM FOR RELIEF
### (Negligence)

59.    Plaintiffs reallege paragraphs 1 through 40.

60.    Over the last two years dating back to the 2014 irrigation season, defendant has negligently failed to deliver Umatilla River and McKay Reservoir water resources to plaintiffs consistent with plaintiffs' primary and supplemental senior water rights.  Defendant knew or should have known that it was delivering water to junior rights holders in violation of plaintiffs' senior rights.

61.    As a result of defendant's negligence, plaintiffs have suffered economic damage in the approximate amount of $250 per acre, but in amounts that will be specifically proven at trial.  Collectively, over the last two irrigation seasons and during the current 2016 season, plaintiffs have suffered a loss of approximately $1.24 million.

### SIXTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

62.    Plaintiffs reallege paragraphs 1 through 40.

Page 18 -  **COMPLAINT FOR UNCONSTITUTIONAL TAKINGS AND OTHER CLAIMS**

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

63.    As an irrigation district governed by Oregon law, defendant owes a trust or fiduciary duty to each of its patrons to deliver the water resources to which each district patron is entitled consistent with Oregon water rights law.  As alleged above, defendant has blatantly breached that trust in multiple respects that have caused substantial water resources to be diverted from plaintiffs and other senior water rights holders to junior users in violation of defendant's trust obligation to those senior rights holders.

64.    As a result of defendant's breach of its trust obligations, plaintiffs have suffered economic damage in the approximate amount of $250 per acre, but in amounts that will be specifically proven at trial.  Collectively, over the last two irrigation seasons and during the current 2016 season, plaintiffs have suffered a loss of approximately $1.24 million.

65.    Plaintiffs seek injunctive relief prohibiting defendant from continued breaches of its trust obligations to plaintiffs as alleged in paragraph 45 above.

WHEREFORE, plaintiffs pray that this Court award the following relief:

1.    On their First and Second Claims for Relief, for collective damages in the amount of $2.9 million, plus prejudgment interest and plaintiffs' reasonable attorney's fees and costs;

2.    On their Third Claim for Relief, for a declaratory judgment declaring that defendant is legally prohibited from the following:

    a.    Withdrawing water at its diversion canal on the Umatilla River that exceeds the level of flow in cfs authorized for district patrons and non-patrons holding certificated water rights who are at the time of withdrawal entitled to priority based on the Umatilla River's live flow measured at the Pendleton River gauge;

    b.    Failing to monitor water usage by district patrons throughout the irrigation system and to properly account for plaintiffs' and other senior users' accumulation rights;

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139

c.    Failing to enforce Oregon's priority date water rights system by failing to cut off junior users when required and allowing illegal water spreading on acres without sufficient water rights to the Umatilla River and McKay Reservoir; and

d.    Making any further deliveries to the holders of void limited water delivery contracts.

3.    On their Fourth, Fifth and Sixth Claims for Relief, for collective damages totaling $1.24 million;

4.    For preliminary and permanent injunctive relief consistent with subparagraph 2 above; and

5.    Such other relief as maybe just and proper.

DATED this 28th day of June, 2016.


HAGLUND KELLEY LLP

By: _____
     Michael E. Haglund, OSB No. 772030
     Julie A. Weis, OSB No. 974320
     Attorneys for Plaintiffs


TONKON TORP LLP


By: s/Janet E. Neuman_____
     Janet E. Neuman, OSB No.  813258
     Attorneys for Plaintiffs

HAGLUND KELLEY LLP
ATTORNEYS AT LAW
200 SW MARKET STREET, SUITE 1777
PORTLAND, OR 97201
PL01F--46139